UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE KROGER CO.,

       Plaintiff and Counter-Defendant,      CIVIL CASE NO. 06-11573

v.

UNITED FOOD AND COMMERCIAL      HONORABLE PAUL V. GADOLA
WORKERS UNION, LOCAL 876,          U.S. DISTRICT JUDGE

       Defendant and Counter-Plaintiff.
_____/

## ORDER GRANTING DEFENDANT AND COUNTER-PLAINTIFFS MOTION TO ENFORCE FINAL AND BINDING ARBITRATION OPINION AND AWARD

Before the Court is Plaintiff/Counter-Defendant's ("Plaintiff") motion for summary judgment to partially vacate the arbitrator's March 6, 2006 Opinion and Award and Defendant/Counter-Plaintiff's ("Defendant") motion to enforce the Opinion and Award. For the reasons stated below, Plaintiff's motion is denied and Defendant's motion is granted.

**I.    BACKGROUND**

Plaintiff, The Kroger Co. ("Kroger"), maintains its principal place of business in the State of Ohio. Defendant United Food and Commercial Workers Union Local 876 ("UFCW 876" or "Union") maintains its principal place of business in the State of Michigan. Plaintiff Kroger has filed suit under the Labor Management Relations Act of 1947, 29 U.S.C. § 185 and the Arbitration Act 9 U.S.C. § 10. The case is properly before the Court on federal question jurisdiction pursuant to 28 U.S.C. § 1331.

### A. The Collective Bargaining Agreement

Kroger and the UFCW 876 entered into a collective bargaining agreement ("CBA") governing the employment relationship between Kroger and certain classifications of Kroger meat department employees. Although the CBA contains many provisions, those pertinent to the instant case pertain to uniforms for employees, compensation of employees, and the arbitration of grievances. Article X, Section 10.10 of the CBA provides:

> "**Uniforms and Tools -** All uniforms and tools deemed necessary shall be furnished by the Company and shall be laundered and maintained at the Company's expense. Where drip dry uniforms are provided, the employee shall be responsible to maintain and launder."

Compl., Exh. A., p. 13. Article X, Section 10.3 of the CBA provides, in pertinent part:

> **Pay for all Time -** The hours of each employee shall be scheduled by the Employer in conformity with the Agreement mentioned herein. Employees shall be paid for all time spent in the service of the Employer. Every week, each employee shall punch the time clock and record all hours worked on a time sheet. . . . For failing to follow this procedure, the employee shall be punished up to and including discharge.

*Id.* at 11. Section V of the CBA, entitled "Grievance Procedure," contains a multi-step process for the resolution of grievances. If a grievance cannot be resolved through the preliminary steps of the process, the procedure requires that the aggrieved party present the dispute to an arbitrator. *Id.* at 5-8. The only portions of the "Grievance Procedure" now at issue are those of Section 5.4:

> The arbitrator shall have the authority and jurisdiction to determine the propriety of the interpretation and/or application of the Agreement respecting the grievance in question, but he shall not have the power to alter or modify the terms of the Agreement. . . .
>
> He shall have the authority and jurisdiction in cases concerning discharge, discipline, or other matters, if he shall so determine to order the payment of back wages and

compensation for an employee which the employee would otherwise have received and/or enter such other and/or further award as may be appropriate and just. . . .

[T]he arbitrator does not have the authority to go outside the bounds of the agreement, although he/she may look outside the agreement where necessary in order to interpret the terms of the Agreement.

*Id.* at 6-7.

### B. Facts

On July 17, 2003, Kroger sent a letter to the Union advising it that Kroger would be implementing a change in its meat department uniforms policy. Def.'s Mot. to Enforce, ¶ 10. Prior to the new policy, Kroger had provided meat department employees with white uniforms that were laundered and maintained by an outside laundry service at Kroger's expense. *Id.* ¶ 11. The new policy provided the employees with burgundy colored "drip dry" uniforms. Under the new policy, the employees were required to maintain and launder the drip dry uniforms on their own time and at their own expense. Compl., ¶ 10. The Union filed a grievance on October 17, 2003, alleging that the new policy violated the CBA that was then in effect. Def.'s Mot. to Enforce, ¶ 13. A second grievance was filed on December 5, 2003. *Id.* The grievances ultimately arrived before Arbitrator Alan Walt ("Arbitrator").

Neither party disputes the Arbitrator's initial jurisdiction or hearing of the issue. After a hearing on the matter and considering the evidence presented from both sides, the Arbitrator issued an Arbitration Opinion and Award ("Arbitrator's Opinion") on March 6, 2006. The Arbitrator's Opinion found in relevant part: 1) Kroger had the right to require the use of the new uniforms; 2) Kroger also had the right to require the employees to launder and maintain the uniforms; 3) Kroger, however, was required to compensate the employees for the time and expense associated with

laundering the new uniforms; 4) Kroger was required to generate and distribute to employees a new uniforms policy; 5) the two parties had to confer to calculate all expenses that had resulted from the maintenance and laundering of the uniforms by the employees.

Kroger's complaint, as well as its motion for summary judgment, now ask this Court to partially vacate the Arbitrator's Opinion. The Union filed a counter-claim and a motion, each requesting the Court to enforce the Arbitrator's Opinion in its entirety. For the reasons set out below, the Court denies Plaintiff's motion to partially vacate and grants Defendant's motion to enforce the Arbitrator's Opinion.

## II. LEGAL STANDARD

Federal courts maintain a very deferential review of opinions rendered by arbitrators. *See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987) ("[T]he courts play only a limited role when asked to review the decision of an arbitrator."). The courts are not allowed to engage in evaluation of the merits of a claim that has previously been before an arbitrator, even if serious errors are alleged by the parties. *Id.* Arbitrators are authorized by the parties to provide meaning to the language of the agreement, and the court may not invalidate an arbitrator's opinion on the basis that he misread that agreement. *Id.* at 38. The Supreme Court has determined that, "[a]s long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." *Id.* at 36 (quoting *Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960)).

The Sixth Circuit has identified four factors to aid in determining whether an arbitrator's opinion "draws its essence" from the agreement. A reviewing court must must determine whether

the opinion: (1) "conflicts with express terms of the agreement;" (2) "imposes additional requirements not expressly provided for in the agreement;" (3) "is not rationally supported by or derived from the agreement;" or (4) "is based on general considerations of fairness and equity instead of the exact terms of the agreement." *Beacon Journal Publ'g Co. v. Akron Newspaper Guild*, 114 F.3d 596, 600 (6th Cir. 1997) (quoting *Dallas & Mavis Forwarding Co. v. Local Union No. 89*, 972 F.2d 129, 134 (6th Cir. 1992)). Thus, this Court must analyze whether the Arbitrator's Opinion draws its essence from the agreement pursuant to the Sixth Circuit's framework..

**III.    ANALYSIS**

Plaintiff Kroger contends that a consideration of each of the four factors indicate that the Arbitrator's Opinion did not draw its essence from the agreement and therefore should be partially vacated. *See Beacon Journal*, 112 F.3d at 600. The Court disagrees.

   *1.    It conflicts with express terms of the agreement*

Kroger argues that the Arbitrator ignored the word "responsible" in the CBA when he required Kroger to compensate the employees for their laundering expenses. *See* CBA, Section 10.10 ("Where drip dry uniforms are provided, the employee shall be *responsible* to maintain and launder.") (emphasis added). Kroger contends that "responsible" implies "financially responsible" and provides case law language supporting this contention.

Although Kroger's reading of "responsible" to include "financially responsible" is plausible, the Arbitrator did not agree on that interpretation. It is well within the Arbitrator's authority to give meaning to words within the agreement. *See* CBA Section 5.4 ("The arbitrator shall have the authority and jurisdiction to determine the propriety of the interpretation and/or application of the

5

Agreement. . ."). This Court is not at liberty to compel the Arbitrator to infer that the word "financial" comes before the word "responsible."

Similarly, it is well within the scope of authority of the Arbitrator to conclude that the laundering and maintenance of the new burgundy uniforms was done "in service [to] the employer" and thus, that the employees require compensation for the time spent laundering the uniforms. *See* CBA Section 10.3 ("Employees shall be paid for all time spent in the service of the Employer.").

Kroger also claims that the Arbitrator ignored the express terms of Section 4.1 of the agreement when he required Kroger to issue a uniform policy, thereby usurping management's authority "to establish and maintain rules and regulations." *See* CBA Section 4.1 ("[T]he right to establish and maintain rules and regulations covering employees in the stores . . . [is] vested in the Employer. . . ."). However, the Court finds that the Arbitrator was within the scope of his authority to require the issuance of such a policy as authorized by Section 5.4, which states, "[The Arbitrator] shall have the authority . . . to . . . enter such other and/or further award as may be appropriate and just." CBA Section 5.4. The Arbitrator did not establish and maintain any rules, he only required that Kroger issue its policy to the employees. The requirement of the issuance of the uniform policy in the Opinion and Award is "appropriate" and "just." *See id.*

*2. It imposes additional requirements not expressly provided for in the agreement*

Kroger alleges five instances of "additional requirements not expressly provided for in the agreement" that were implemented by the Opinion and Award: 1) requiring pay for time spent laundering; 2) requiring pay for expenses associated with laundering; 3) requiring "negotiation" of

6

the expenses related to alleged "additional requirements;" 4) requiring issuance of a written policy; and 5) retaining jurisdiction over the suit even after the issuance of the Opinion and Award.

First, as already stated, the Arbitrator was well within his authority to determine that time spent by the employees laundering the uniforms is time spent in service to the employer. *See* CBA Section 10.3. Second, the Arbitrator reasonably interpreted the CBA's language stating, "All uniforms and tools deemed necessary shall be furnished by the Company and shall be laundered and maintained at the Company's expense. Where drip dry uniforms are provided, the employee shall be responsible to maintain and launder." CBA Section 10.10. A plausible interpretation yields that when the company issues drip dry uniforms, the responsibility to launder and maintain the items shifts to the employees, but the burden of the expense remains with the Company. Thus, requiring payment for expenses associated with laundering is not an additional requirement as Kroger contends, but is rather "time spent in the service of the Employer," for which the employee is entitled to pay. *See* CBA §§ 10.3, 10.10. Third, as noted by Defendant UFCW 876, ordering the parties to calculate laundering and maintenance expenses does not constitute "renegotiation" of any contractual terms. The Arbitrator merely recognized that the parties were in a better position to determine the laundering and maintenance expenses. Therefore, he directed the parties to calculate that number. He did not find that the parties had to *negotiate* the amount as a term of the contract, but rather, because they were in a better position to determine the actual amounts in question they should confer and determine the amount. Fourth, the requiring of the issuance of the uniform policy is within the terms of the contract as discussed above. Fifth, contrary to Kroger's argument the Arbitrator is not asserting jurisdiction on a new grievance. Rather, the present grievance is

considered unsettled until the back pay and expenses number is determined. Until that is settled, the Arbitrator inherently retains jurisdiction.

   *3.   It is not rationally supported by or derived from the agreement*

Kroger contends that the Arbitrator's read provisions of the CBA out of context in rendering his decisions. The Court does not agree, the text of the agreement supports the Arbitrator's findings. Furthermore, even if the Arbitrator did read some provisions out of context, such a finding would not necessarily entail a finding that the Arbitrator's interpretation was not rationally supported or not derived from the agreement.

   *4.   It is based on general considerations of fairness and equity instead of the exact terms of the agreement*

Plaintiff suggests that the Arbitrator's opinion must have been motivated by his sense of fairness and equity instead of the exact terms of the agreement because he retained jurisdiction despite there being no contract violation and he required Kroger to negotiate and draft a policy. But it is erroneous to claim that the Arbitrator found no violation. A violation was found in that the employees were not being paid for all the time spent in service to the employer when they were maintaining and laundering their uniforms. Therefore, the Arbitrator required the computation of the necessary compensation. Additionally, as the Court has already explained above, the Arbitrator's issuance of the policy and retention of jurisdiction were "appropriate" and "just." CBA Section 5.4. Accordingly, the Arbitrator's Opinion followed the terms of the agreement and was not motivated by his sense of fairness and equity.

**IV.   CONCLUSION**

Accordingly, after a thorough review of the Arbitrator's Opinion, considering the Court's very deferential view of those opinions, *see United Paperworkers Int'l Union, AFL-CIO*, 484 U.S. at 36, and considering each of the factors set forth in *Beacon Journal Publ'g Co.*, 114 F.3d at 600, the Court concludes that the Opinion "draws its essence from the collective bargaining agreement." *Id.* (quoting *Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960)). Therefore, the propriety of the Arbitrator's Opinion and Award's is apparent; Plaintiff's motion to partially vacate will be denied and Defendant's motion to enforce the Opinion will be granted.

For the reasons stated above, **IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment to partially vacate the Opinion and Award [docket entry #33] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's motion to enforce the final and binding arbitration opinion and award [docket entry #11] is **GRANTED**.

**SO ORDERED.**

Dated:  August 28, 2007   　　　　　　　　　　s/Paul V. Gadola
　　　　　　　　　　　　　　　　　　　　　　HONORABLE PAUL V. GADOLA
　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

Certificate of Service

I hereby certify that on   August 28, 2007  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:          Mark C. Knoth; Terrence J. Miglio; Lisa M. Smith                        , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: _____.

                                                                                             s/Ruth A. Brissaud
                                                                                             Ruth A. Brissaud, Case Manager
                                                                                             (810) 341-7845